FILED

2016 Jun-15  PM 04:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

**JOHNATHAN OLDHAM AND**
**MORGAN FLEMING,**

    **PLAINTIFFS,**

**V.**                                                    **CIVIL ACTION NO.:**

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,**
**CBCINNOVIS, INC., AND**                    *__Jury Trial Demanded__*
**INNOVIS DATA SOLUTIONS, INC.,**

    **DEFENDANTS.**

## COMPLAINT

COMES NOW the plaintiffs, Johnathan Oldham and Morgan Fleming ("Plaintiffs"), by and through their undersigned counsel, and with knowledge as to their own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, allege as follows:

### PRELIMINARY STATEMENT

1.     This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act or FCRA).  "Credit is the lifeblood of the modern American

economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011). Congress made the following findings when it enacted the FCRA:

> **(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

> **(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

> **(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

> **(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).  Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy,

relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

2.      "Mixed files" create a false description of a consumer's credit history.

3.      A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.  More specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991)[1].

4.      More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[2] *See also* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[2] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited March 31, 2016.

5.     Defendants were aware of the government enforcement actions described in the preceding paragraph before March 1, 2016.

6.     Mixed files are not a new phenomenon.  The consumer reporting agencies have been on notice of the existence of mixed files for over thirty (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

7.     Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

8.     Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

9.     Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

10.    In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

11.     In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

12.     In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number.

13.     In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states.  Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.  For example, procedures during the reinvestigation process include assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

14.     In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states.  Equifax agreed it would maintain reasonable

procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and Social Security number) for matching and identification purposes.

15.    In 1994, Equifax signed a Consent Order with the FTC.  Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

16.    The defendants in this case are aware of Federal Trade Commission and state attorney general enforcement actions[3] concerning or related to mixed files.

17.    In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated

---

[3] Including the most recent Alabama state attorney general enforcement action settled May 20, 2015.  See http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited March 31, 2016.

the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, Trans Union continues to mix consumers' files with other consumers' files.

18.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

19.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

20.     Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

21.    In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012).  Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

22.    In the regular course of business, Experian currently maintains a list of lawsuits filed against it, and the list is readily accessible to Experian.

23.    Despite federal law, Congressional mandate, federal and state government enforcement actions, hundreds of other consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

24.    The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

25.    Experian's parent corporation, Experian plc, reported $4.81 billion in revenue for the year ending March 31, 2015.[4]

26.    CBC and Innovis are aware of the above-described government enforcement actions.

---

[4]http://annualreport.experianplc.com/2015/_resources/pdf/Experian%20Annual%20Report%202015.pdf   Last visited March 31, 2016.

27.     CBC and Innovis were aware of the *Williams* verdict before March 1, 2016.

28.     CBC and Innovis were aware of the *Thomas* verdict before March 1, 2016.

29.     CBC and Innovis were aware of the *Miller* verdict before March 1, 2016.

30.     CBC and Innovis were aware of the existence of mixed files, as defined above, before Plaintiffs filed this lawsuit.

31.     CBC and Innovis have been sued numerous times by consumers whose files were mixed with a different consumer.

## JURISDICTION & VENUE

32.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

34.     Plaintiff Johnathan Oldham ("Mr. Oldham") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

35.     Plaintiff Morgan Fleming ("Ms. Fleming") is an adult individual resident of this judicial district.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

36.     Oldham and Fleming are referred to collectively as "Plaintiffs."

37.     Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in California. Experian does business in this judicial district. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

38.     Defendant CBC Innovis, Inc. ("CBC") is a foreign corporation with its principal place of business, upon information and belief, in the state of Ohio.  CBC does business in this judicial district.  CBC is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.  CBC, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.  The consumer credit information

maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.  Once CBC receives the requested consumer credit information, it assembles and merges the information into a CBC credit report.  CBC sells the credit report to third parties, such as PNC Bank.  In the credit reporting industry, this is known as a "3 in 1" or "tri-merge" credit report.

39.    Defendant Innovis Data Solutions, Inc. ("Innovis") is a foreign corporation with its principal place of business, upon information and belief, in the state of Ohio.  Innovis does business in this judicial district.  Innovis is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information. Innovis, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.  The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.  Once Innovis receives the requested consumer credit information, it assembles and merges the information into a Innovis credit report.  Innovis

sells the credit report to third parties, such as PNC Bank.   In the credit reporting industry, this is known as a "3 in 1" or "tri-merge" credit report.

40.    CBC and Innovis sell consumer reports concerning individuals who apply for credit, including mortgages.

41.    Experian, CBC and Innovis are referred to collectively as the "Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

42.    Defendants are regulated as "consumer reporting agenc[ies]" ("CRA") under the FCRA 15 U.S.C. § 1681a(f).

43.    CBC and Innovis are CRAs and Resellers of credit information pursuant to 15 U.S.C. § 1681a(u).

44.    Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

45.    Pursuant to the FCRA, Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."   15 U.S.C. § 1681e(b).

46.    The defendants sold credit reports to third parties with inaccurate and derogatory information concerning Mr. Oldham.   The information includes, but is not limited to, personal identifying information, such as date of birth, and at least nineteen (19) credit accounts (the "inaccurate

information"). The information is false because the information relates to another consumer.  The inaccurate information harms Mr. Oldham's credit reputation because it does not accurately depict his credit history and creditworthiness.

47.    Experian prepared and issued credit reports concerning Mr. Oldham that included the inaccurate information. When Experian prepared consumer reports concerning Mr. Oldham, Experian knew at least one of the accounts was opened when Mr. Oldham was a minor or with a Social Security number different from Mr. Oldham's, or both. Experian knows minors cannot contract for a mortgage.  Notwithstanding, Experian sold no less than one credit report pertaining to Mr. Oldham that included accounts that were opened when he was a minor.  On more than one occasion, Mr. Oldham requested his consumer disclosure from Experian.  On more than one occasion, Experian failed to provide Mr. Oldham with his credit report. Mr. Oldham disputed the false information to Experian. Mr. Oldham asked Experian to provide him with the steps it undertook when reinvestigating the disputed information.  On at least one occasion, Experian failed to provide Mr. Oldham with the steps it undertook when reinvestigating the disputed information.

48.    Upon information and belief, Experian had identified Mr. Oldham's file as a "confirmed mixed file" as that term is defined by Experian's settlement agreement with the New York Attorney General.

49.    In or around March 2016, Mr. Oldham applied for a loan with PNC Bank for his first mortgage.

50.    Before March 2016, Mr. Oldham had never had a mortgage.

51.    CBC or Innovis received a request from PNC Mortgage Division of PNC Bank for Mr. Oldham's credit report on or about March 29, 2016.

52.    Upon information and belief, said creditor certified to CBC or Innovis, or both, that it had a permissible purpose to obtain Mr. Oldham's credit report.

53.    Upon information and belief, the permissible purpose for PNC to obtain Mr. Oldham's credit report from CBC or Innovis was to determine his eligibility for credit.

54.    Upon information and belief, CBC or Innovis, or both, requested a consumer report pertaining to Mr. Oldham from CRAs Equifax, Experian and Trans Union.

55.    Upon information and belief, CBC or Innovis, or both, certified to the CRAs that it had a permissible purpose to obtain Mr. Oldham's consumer report.

56.     Upon information and belief, the permissible purpose for CBC or Innovis, or both, to obtain Mr. Oldham's credit report from the CRAs was for PNC to determine his eligibility for credit.

57.     CBC or Innovis, or both, received consumer reports from the CRAs.

58.     CBC or Innovis, or both, prepared and sold a credit report to PNC Mortgage Division of PNC Bank in connection with Mr. Oldham's application for credit on March 29, 2016.

59.     The CBC and Innovis credit report included the inaccurate information described above.

60.     Before CBC and Innovis sold the credit report to PNC Bank, CBC and Innovis, did not do anything to assure the maximum possible accuracy of the information contained in Mr. Oldham's credit report.

61.     For example, the credit report sold to PNC included accounts, including two mortgages, opened before Mr. Oldham was sixteen years old.

62.     CBC and Innovis sold a credit report to PNC that included names that did not belong to Plaintiff.

63.     CBC and Innovis sold a credit report to PNC that included over $12,000 in past due fees.

64.     CBC and Innovis sold a credit report to PNC that included accounts that were opened when Plaintiff was just ten (10) years old.

65.     CBC and Innovis sold a credit report to PNC that included no less than nineteen (19) accounts that were reported only by Experian.  In other words, CRAs Equifax and Trans Union did not attribute nineteen of the accounts to Plaintiff.

66.     CBC and Innovis sold a credit report to PNC that included a credit score reported by Experian that was over 100 points lower than reported by CRAs Equifax and Trans Union.

67.     CBC and Innovis did not contact Experian to address any of the inconsistencies prior to selling the credit report to PNC Mortgage Division of PNC Bank.

68.     Ms. Fleming requested her consumer from Experian multiple times.  Ms. Fleming provided Experian with sufficient information to locate her file, including her Social Security number, date of birth, and copies of her Social Security card, driver's license, date of birth, birth certificate, and insurance documents in support of her identification.  Notwithstanding, and no less than twice, Experian failed to provide Ms. Fleming with the contents of her file upon receipt of her request.

69.    As a result of Defendants' failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including credit denials, economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (against Experian)
### (Negligent Noncompliance with FCRA)

70.    Plaintiffs adopt and incorporate the above-numbered paragraphs as if fully stated herein.

71.    Experian negligently failed to comply with the requirements of the FCRA.

72.    As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

73.     Plaintiffs request attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)
### (Willful Noncompliance with FCRA)

74.     Plaintiffs adopt and incorporate the above-numbered paragraphs as if fully stated herein.

75.     Experian willfully failed to comply with the requirements of the FCRA.

76.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiffs suffered and continue to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiffs' normal and usual activities for which Plaintiffs seeks damages in an amount to be determined by the jury.  Plaintiffs also seek statutory and punitive damages in an amount to be determined by the jury.

77.     Plaintiffs request attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against CBC and INNOVIS)

**(Negligent Noncompliance with the FCRA)**

78.     Mr. Oldham adopts and incorporates the above-numbered paragraphs as if fully stated herein.

79.     CBC and Innovis negligently failed to comply with the requirements of the FCRA.

80.     As a result of CBC's and Innovis' failure to comply with Section 1681e(b)'s requirements of the FCRA, Mr. Oldham suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Mr. Oldham's normal and usual activities for which Mr. Oldham seeks damages in an amount to be determined by the jury.

81.     Mr. Oldham requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

**COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT
REPORTING ACT
(Against CBC and Innovis)
(Willful Noncompliance with the FCRA)**

82.     Mr. Oldham adopts and incorporates the above-numbered paragraphs as if fully stated herein.

83.    CBC and Innovis willfully failed to comply with Section 1681e(b)'s requirements of the FCRA.

84.    As a result of CBC's and Innovis' failure to comply with the requirements of the FCRA, Mr. Oldham suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Mr. Oldham's normal and usual activities for which Mr. Oldham seeks damages in an amount to be determined by the jury. Mr. Oldham also seeks statutory and punitive damages in an amount to be determined by the jury.

85.    Mr. Oldham requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## JURY DEMAND

86.    Plaintiffs request a jury trial on all claims.

## PRAYER

Wherefore, Plaintiffs pray for judgment against Defendants as follows:

On the First Claim for Relief:

1.   Actual damages to be determined by the jury; and

2.   Attorneys' fees and costs.

On the Second Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

On the Third Claim for Relief:

    1.  Actual damages to be determined by the jury; and

    2.  Attorneys' fees and costs.

On the Fourth Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

Dated: June 15, 2016

Respectfully submitted,

**/s/ Micah S. Adkins**
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL  35203
Telephone: (205) 458-1204
Facsimile:   (205) 208-9632
Email:    MicahAdkins@ItsYourCreditReport.com